at all and City of Cincinnati at all, arguments not to exceed 15 minutes per side, and the appellees are sharing the 15 minutes, and Ms. Nelson, for the appellants, you may proceed. You may proceed. You may proceed. Thank you, Your Honor. May it please the Court, my name is Theresa Nelson and I am counsel for the appellants, JoAnn Snyder and Larry Snyder. We have several issues to present to the Court today, and sort of in a roadmap summary, we're alleging that the District Court erred by dismissing on a 12B6 motion, subject only to the pleadings, JoAnn Snyder's claims for the violations of her constitutional rights based on In addition, the District Court erred by dismissing JoAnn Snyder's Federal Torts Claims Act causes of action against the United States by applying the discretionary function exception to the waiver of sovereign immunity, where we will show, or we believe, that the pleadings support that a federal employee failed to adhere to established guidelines and violated JoAnn Snyder's constitutional rights against unreasonable searches and seizures and her right to due process. In addition, we would say that the District Court also made reversible error by drawing certain conclusions with regards to the Federal Torts Claims Act, in that there was no proximate cause between the actions that the FBI agent had, and drawing also inferences, unfair inferences, against my clients with regards to the validity of the arrest warrant and basically saying that the FBI agent did not participate in any arrest by ignoring operative facts that this entire operation was pursuant to a joint task force between both the FBI and the City of Cincinnati Police Department. The FBI agent did not participate in the arrest, right? I would agree with you, Your Honor, that the FBI agent did not physically place handcuffs on my client. He wasn't there, was he? He was not there. He wasn't handcuffs on, he wasn't sitting in a car, he wasn't in the neighborhood, as far as we know, right? To actually address that even further, the City of Cincinnati actually did not even place handcuffs on my client. She was arrested by the Westchester Police Department. I would point out to the court that we're not pursuing something with regards to the Westchester Police Department because they didn't have any foresight or any information with regard to the basis of that warrant because they were not involved. However, the FBI agent was intimately involved, as well as the City of Cincinnati police officer who signed that warrant, were intimately involved from day one of this task force. And I think the facts of that, of the investigation, are actually very critical because this is a little bit different than simply just arresting the wrong person. We have a situation where we have a joint task force, both the FBI and the City of Cincinnati working together. They implemented and used a confidential informant who, as we have alleged in our complaint, was inherently unreliable. They provided what is now known as basically false information. They basically gave the FBI and the City of Cincinnati information that a woman named Joanne, who was of a particular age, 50s to 60s, who lived in Cincinnati, was potentially selling drugs with her daughter by the name of Stephanie Schneider. That was about it. Then what occurred is there was a, what was arranged is a buy that was witnessed by the FBI and the City of Cincinnati, the agents and the officer that are individually sued in this matter, witnessed the buy. So actually saw the actual Joanne in this situation engage in this activity. But they said they didn't see that. They were in the vicinity but didn't see the participants. That's not right. Well, this is all based on the pleadings at this point, and I think that that actually also goes to a point of we have not been able to factually develop what exactly happened. This is based solely on the allegations of the complaint, which to be blunt and very frank with this court, we did try to depose the officer, at least the City of Cincinnati officer, in the underlying criminal action before the matter was dismissed, sealed, and closed, and we were not able to have access to develop it, exactly how far they were away, how well they could see it. They were in the vicinity and actually, so could they see their faces? I can't represent or deny that. Was that a finding in the pleadings or something that the officers said they couldn't really tell who was participating? Well, I wouldn't agree that the officers couldn't tell, but the information about what actually occurred was obtained by myself in a meeting with, I believe it was the chief counsel of the FBI, who came and met with myself and my client and was providing us certain pieces of information but not the full story because there was certain information that he was either A, not aware of, or B, would not provide us the information. We were not able to interview the FBI agent himself either. So whether or not the officers could actually see their faces I think is a factual issue, but in the complaint it does say that they witnessed the exchange. In addition though, there was a situation where the actual Joanne, who committed this crime that was witnessed by the city of Cincinnati and the FBI, was interviewed in person by two FBI agents. And still, somehow my client then got connected with this crime. That is, I think as well, the operative information is from the beginning to the end. This is not something that they could say, well, we had no idea who the real perpetrator or potential alleged criminal was. They actually talked to her, spoke with her on the phone, and saw her in person. However, that... That's when, after that, the FBI sort of pulled out of the case, I thought. Well, I think that there are ways to interpret that again, and I think that what they did is they decided not to pursue federal charges against her and turned the file over to their partner, the city of Cincinnati. Again, I think cutting off the line between one party and another party in a joint task force I don't think is an appropriate way to evaluate this case. You're basically saying, well, you're all together at the beginning, but you're not all together at the end. I think the actions of one, a reasonable inference based on the information in the complaint, could be drawn that somebody who's involved on day one was involved on day 10 or 20 and when the arrest actually occurred. That is the way that the district court erred by saying, I would agree with you wholeheartedly that the FBI agent didn't place handcuffs on my client, neither did the city of Cincinnati for that matter. However, their actions from the beginning to the end were the catalyst and every step along the way did lead to her incarceration. Are you saying there's vicarious liability? No. Well, it sounds like you are. I mean, you have to argue that a particular defendant officer individually did something, don't you not? Do you not? And the fact that some other officer did something doesn't make him responsible. Well, Your Honor, in this particular case, the agent that is individually sued in this case did the interview, was witness to the buy, as well as connected my client to the crimes that she never committed. The officer in this particular case that is sued individually is also the one that signed the warrant to have her arrested. So they did, in fact, have very specific actions and participated in this process. They did? You mean he did? Both Mr. Giordano, Special Agent Giordano and Officer O'Brien, both had very specific activities that led to my client's incarceration. But what other officers know can't be imputed to them if they don't themselves know it, do they? Well, I would also point to... I would agree. I'm not saying that there was any sort of subliminal information here. I think what is inherently important to know is A, both of these officers, the officer and the special agent, were involved at the very beginning and witnessed the drug buy that was arranged. And number two, I can't represent to this court, and neither can the defendants at this point, what was contained and transmitted between the FBI and the city of Cincinnati. That information is not... This is all based on the pleadings, which, again, I think shows how premature these motions are and that it is erroneous to actually determine these types of issues based on a 12b sex at the pleading stage. This is more appropriate for summary judgment because weighing all of the facts that you are raising. I see I have about 30 seconds left. And what I would say is there is... Basically where we have is that the officers in this case both were provided, the special agent and the officer, qualified immunity when it is clear that there was a violation of my client's constitutional rights, her rights against being an unreasonable search and seizure, her right to due process. Those rights are clearly established, and it was unreasonable when visually seeing who was involved with this crime to then unreasonably connect my client, who the only association she has with this other woman, so they have the same first name and live in basically the same tri-state area. Thank you. Thank you. We'll hear from opposing counsel. Good morning, Your Honors. Morning. May it please the Court. My name is Matt Horowitz. I'm an Assistant United States Attorney for the Southern District of Ohio. I will be representing the United States of America and Special Agent Chris Giordano today. With the Court's permission, I will use eight minutes of the 15 minutes that are allotted to the defendants in this matter. And Ms. Powell will use seven minutes. Is that it? That's it, Your Honor. All right. Thank you very much, Your Honor. Go ahead. I'd like to begin with a question that Judge Seiler asked about the FBI's participation in this matter. And, Judge Seiler, your question is very apt, and, in fact, it goes one step further. You pointed out the FBI wasn't involved in the arrest. Not only was the FBI not involved in the arrest, the allegation in the complaint is that the FBI had closed its file, chosen not to pursue any charges, and handed over its case file four months before there was an arrest warrant, a complaint, or the arrest occurred. This is what the facts of this case are, shows, alleges, a brief investigation from December to January. Now, where did that come from on this motion to dismiss? Did that come from your side? No, that came from the plaintiff's complaint. At this point, on a motion to dismiss, we are addressing solely the plaintiff's allegations. We assume that they are true, and the question before this Court is whether the allegations are sufficient to overcome qualified immunity and to state plausible claims for state law torts in Ohio under the FTCA. And that leads into another point, the point about discovery, further discovery in this matter. Qualified immunity, the Supreme Court in this circuit has routinely recognized, is an immunity not just from liability, it's immunity from suit. It should be resolved at the earliest possible opportunity, and if plaintiff has not alleged facts that would overcome that qualified immunity, she cannot move forward to discovery to try to delve up facts that she cannot allege. The question before this Court is whether there are sufficient facts alleged in this complaint to show that there is personal liability for this FBI agent, Special Agent Giordano, and whether there are plausible Ohio state law tort claims. Do you concede the factual allegations of the plaintiff for purposes of this qualified immunity issue? Yes. At the district court level, we did not challenge any of the factual allegations of the plaintiff. Our position was solely that the plaintiff's allegations are not sufficient to overcome qualified immunity or state plausible claims for state law torts. So there are no material factual disputes between the plaintiff's allegations and your position? There are not. The sole area where, and this is not an issue that's on appeal, the sole area where the United States presented evidence outside the complaint was with regard to the claim of the plaintiff's husband, Larry Snyder, who still has a pending claim against the city, but not against the United States. The United States moved to dismiss his claim on the basis that he failed to file an administrative tort claim, which is a prerequisite to suit under the FTCA, and that claim was dismissed by the district court and has not been appealed. That is the sole evidence the United States presented outside of the complaint. All right. And returning a bit to the Bivens, because that's where the plaintiff spent most of her time, there are several reasons why plaintiff's Bivens claims fail. This court has addressed this morning the issue of qualified immunity already, and the question is whether there was a constitutional violation of a clearly established right. In order to establish a clearly established right, she has to show that every reasonable officer, or any reasonable officer, would know that what he was doing was unconstitutional. Here, there was a very brief FBI investigation. The FBI agent showed a photo, you know, received information from the informant that stated that Stephanie Snyder was selling drugs with her mother, Joanne. He did a driver's license search in the city of Cincinnati for anyone named Joanne Snyder, found one person who matched that, showed the picture to the informant, and asked, is this who you're speaking of? The informant said, well, that could be her if she had been doing drugs. The next step in the investigation was a controlled purchase. And on the controlled purchase, plaintiff's allegation at paragraph 24 of the amended complaint is that the FBI agents were unable to ID the participants. There's no information that was provided to the agents through that buy. At least that is alleged in the complaint. Basically, it was alleged in the complaint that that buy provided no information, further information, to the federal agents that were investigating. Then there was a meeting between Special Agent Giordano and potentially more FBI agents and the drug seller. At that meeting, the allegations is that Special Agent Giordano did not ask for ID. It is unknown to plaintiff whether the seller identified herself as Joanne Snyder or anyone else. At that point, the only remaining allegation to the FBI in the complaint is that the FBI closed its file, terminated its investigation, chose not to pursue charges, and that is the end of the FBI's involvement in this matter. There's no allegation that the FBI or Special Agent Giordano asked the city of Cincinnati to pursue charges, instructed the city to pursue charges, assisted with the preparation of the complaint or the warrant, had any involvement in the arrest, and pursuant to this court's precedent, there's just not enough participation here. I would note one precedent that is particularly relevant because it's recent on this issue of participation. The Sixth Circuit, after the briefing this matter, issued the Robertson decision, and in that decision, the Sixth Circuit went so far as to say that the officer that testified before the grand jury did not participate in the arrest for a false arrest because he was not the arresting officer. For a false arrest claim, then the definition for participation is very narrow in this circuit. And if the officer in Robertson, if Defendant Lucas in Robertson, which was the central figure in the investigation, and was the officer that testified before the grand jury, was not sufficiently involved to participate, then the special agents involved in this case that had closed their file four months before, there's no allegation sufficient to allege participation. I would also note the plaintiff in this circumstance was arrested pursuant to a facially valid warrant. That is a complete defense to this action. As long as there's no allegation that the officers lied or misrepresented material information in seeking the warrant. There's no allegation in that regard. For that reason also, the claims fail. Similarly, there's no allegation of intentional misconduct. Judge Griffin, you raised this this morning, that in order to state a Bivens claim, one must allege more than an innocent or mistaken act. They must allege an intentional act. There's no allegation of that in this complaint. Lastly, on the clearly established constitutional right, the false arrest law in this circuit is certainly well developed. Plaintiff raises due process issues, which are certainly less developed in this area. The question of whether showing the photo ID to the informant to say, is this the woman that you saw? I see my time's about to end, so I'll say, without delving into that case law, it is certainly less than clearly established. Your Honors, unless you have questions with that, I would conclude my time. All right. Thank you. Thank you, Your Honors. Good morning, Your Honors. Good morning. May it please the Court and Counsel, my name is Jessica Powell, and I represent the City of Cincinnati and Officer O'Brien. Your Honors, this is a case of unfortunate incident,  appalling things that happened, and I would like to ask the Court, which do not give rise to a cause of action. And there have been several cases earlier today dealing with qualified immunity, and certainly this is a case where qualified immunity is the dispositive issue, as is the sufficiency of the plaintiff's pleadings. And here, there aren't allegations sufficient in the complaint to give rise to or to defeat the defense of qualified immunity that is properly raised at this point in the case. And what the plaintiff is asking this Court to do is to draw a unreasonable inference that Officer O'Brien improperly relied on false information in securing an arrest warrant for Joanne Schneider. And there's no allegations in the complaint that support that. And one of the things that Counsel for Ms. Schneider indicated is that, I thought I heard her say that Officer O'Brien was involved in the meeting with the woman who ended up not being Joanne Schneider. And that is not in fact alleged in the complaint. The meeting with the woman who ended up not being Joanne Schneider is identified in paragraphs 26 and 27 of the amended complaint. And there's nothing in there to connect Officer O'Brien or to place him in that meeting where he might have potentially gotten more information and might have known more about the identity of the suspect. But again, he wasn't there. So what we have is a facially valid arrest warrant and there's nothing to base on that alone. There's not a constitutional violation because if the arrest warrant was valid, then the detention for less than 24 hours doesn't rise to a violation. I mean, the city of Cincinnati is a separately named defendant here. I mean, what is even the claim against the city of Cincinnati? I mean, they don't have vicarious liability, I assume. So I mean, is there a custom policy or practice that was about alleged or, I mean, what is even, what's the basis of the claim against it? Well, there's no basis for the claim against the city is our position. There are nebulous allegations in the complaint about the city having a custom policy and practice of. They're not vicariously liable, right? Correct. They're not. Okay. So they're just, I'll ask the other side, I guess, but I was looking for something that's a defendant city of Cincinnati, but all, everything here relates to the activities of the officer. They're not, they're not liable for that. Okay. I'll ask the city. I mean, the city certainly agrees with that statement. Get the city out of here. Just the United States is sued too, I think, and they have sovereign immunity here. I mean, I think there's still a party, but okay. Yeah. I think the main issue for the city were a party before they were discussed, I should say. The main issue as it relates to the city defendants is, is the qualified immunity of, of officer O'Brien. And I think it's clear that he acted reasonably. And the question becomes, if a police officer can't reasonably rely on a file that he receives from the FBI to pursue a facially valid arrest warrant, then what is reasonable? And there's not enough here. There's nothing to connect. Any remote possibility that officer O'Brien knew when he obtained that search warrant, that it was based on false or improper information. And so that's what needs to be considered. And that wasn't sufficient sufficiently alleged here. What is, what did officer O'Brien do exactly? He, he helped investigate the case and then he got a warrant from a state judge and then somebody else executed. Did he do something else besides that? No, he, well, he witnessed the drug buy that occurred in December at which the, the participants were not apprehended or arrested. But beyond that, he was not involved in any of the FBI's interviews with the confidential informant, with Stephanie Schneider or with the person who was allegedly Joanne Snyder. So his involvement was extremely limited. And while Mr. Horowitz cited to that Robertson v. Lewis case in support of the government's case, it's also really applicable to the city's defense as well, because factually it involves a similar situation in which a county government was working on a joint task force with the DEA and the plaintiffs involved were arrested based on either faulty information or information from a CI who was not trustworthy. And in that case, similar to this one, what the court said is it related to the county's reliant, the county employees or officers reliance on the FBI agent is that unless the plaintiff can demonstrate that the, the officers at the local level knew or were reckless in not knowing that the information from the DEA was false or incorrect, then there's no liability for those individual officers. So the plaintiff is the master of her complaint. She has not alleged facts sufficient to state a claim either against the city or officer O'Brien in his individual capacity. And for that reason, the district court's decision should be affirmed. And I don't have anything further. If you have questions. Thank you. May I begin? Yes, please. Thank you. I wanted to address judge Griffith. I want to address your question, which is what the claims against the United States are FTCA claims. So they're tort claims with regards to negligent hiring, firing, assault, false arrest, those natures. Those are the similar claims that are brought against the city of Cincinnati. So for their own independent actions with regards to the city of Cincinnati, the claims alleged in the complaint are more of the, the fact that this officer did no other investigation, nothing. He just basically signed an affidavit with no information and did not do any other investigation. All of those things are alleged in our complaint. The city of Cincinnati is not subject to the federal tort claim. Very true. I'm sorry. I wanted to, it's more on the state level for the United States. They say that's discretionary and therefore there is, there's no exception to sovereign immunity as to discretionary decisions. And how do you, how do you respond to that? There's a line of cases, which we have cited in our, our briefs, one of which is called the Limoni or Limone versus United States, which says that the discretionary function exception to the waiver of sovereign immunity does not apply when constitutional violations are occurring. In addition, there, this is briefed as well, is that if you do not follow established guidelines, which we have also cited, which were included as mandates of the FBI, which again, this only applies to the United States with regards to verifying your, your CI with regards to, you know, following constitutional guidelines. Those are specific guidelines, which we have argued are, were not followed. When I was discussing the city, I did not mean that it was an FTCA claim. I'm sorry if I was unclear with that. I was saying it was more of the, the, they were not subject to that, but it's more of a state claim against the city as well as I believe we've alleged 1983 action. To have the immunity or to have the liability of the government agency under Manel, you have to have a policy custom or practice that was implemented by that government, right? Correct. And I would actually have a custom practice. I mean, how do you fit into that? What we would say is the custom and practice of basically rubber stamping, a faulty in unreliable practice to rubber stamp. Let me say, that is what has been alleged in our complaint because that is the information that was available to us since we were not allowed to, uh, you know, develop this more. And I actually would say one of the cases that was cited by the defendants in this case, which was, I think it was Miller. There was actually a case, recent cases decided that it, an individual, which basically somebody was calling in to verify who was a, you know, to get information on a warrant. And the, a, the person on the phone basically said, yeah, you're good. That was found to be an unlawful city practice in the 1983 action was allowed to proceed. That is cited in our brief. The other thing I wanted to address with this court is that we are actually disputing that there is a fact facially valid warrant. The warrant was based on information provided by the CI, which is unreliable, which was, they were steered towards one option, which was my client. The CI's information was nebulous at best where it could have been. It may have been. And none of that was ever followed up upon by anyone, by the FBI, nor by the city of Cincinnati. So whether or not the valid in and of itself based on the sworn affidavit from officer O'Brien was valid has been challenged. We have alleged numerous factual allegations in our complaint, laying out that no further investigation was done. No positive ID was done that the, my client was hurt. Her photograph was showed to the CI. Then the actual perpetrator was interviewed. So how was it that it was continued to stay that my client was connected, that the information that the basis of this complaint was not, or the, the warrant was not valid. So we have actually said that in our arguments that it, this is not that no probable cause actually existed for this warrant. And that actually, I know this court has held numerous times recently, I believe it was in Pritchard versus Hamilton township, that you can't ignore guilt, or you can't say someone's guilty by ignoring all other exculpatory evidence. And that malice in the actions of these officers is implied when there's no probable cause. And I believe judge Clay is actually opined on that. And this is dissent in Harris versus the U S I see my time is up to, does the panel have any questions? No, I think we have your argument in hand. All right. Thank you. Thank you. And the case is submitted and you may call.